# EXHIBIT B

# SECTION 21
# SYSTEM BOARD OF ADJUSTMENT

A.  SYSTEM BOARD

   1. In compliance with Section 204, Title II, of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment, which shall be known as the "AMERICA WEST AIRLINES PILOTS' SYSTEM BOARD OF ADJUSTMENT" (the "Board").  *System Board scope)*

   2. The Board shall have jurisdiction over timely appeals of grievances filed by any Pilot, group of Pilots, the Association MEC or the Company growing out of the interpretation or application of any of the terms of this Agreement, which have not been resolved in accordance with Sections 19, 20 or the Grievance Mediation Letter of Agreement, as applicable.

   3. The jurisdiction of the Board shall not extend to proposed changes in hours of employment, rates of compensation or working conditions covered by existing Agreements between the parties or as subsequently executed.

B.  GRIEVANCE REVIEW BOARD

   1. Before a System Board of Adjustment or Mediation Conference hears a grievance, it shall first be submitted to the Grievance Review Board.  Grievances subject to expedited arbitration shall, unless otherwise mutually agreed upon by the Company and Association, be excluded from this requirement.

   2. The Grievance Review Board shall be composed of no more than three (3) Company representatives and no more than three (3) Association representatives.  The parties may mutually agree to employ the services of a facilitator/mediator to serve with the Grievance Review Board.  In such instances, the parties shall equally share any fees and expenses associated with the facilitator/mediator.  *(Maximum number of board members: three Company and three ALPA)*

   3. The Grievance Review Board shall meet during the third week of January, April, July and October of each calendar year for the requisite period of consecutive days necessary to consider those grievances pending at the Grievance Review Board  *(Meeting dates third week of January, April July and October)*

|  |  |
|---|---|
|  | level. At least thirty (30) calendar days before the meeting, the parties shall confer regarding the anticipated duration and the grievances docketed for the upcoming meeting. Nothing contained herein shall prevent the parties from mutually agreeing to convene a Grievance Review Board meeting more regularly than the quarterly meetings contemplated in this Subsection 21.B.3. |
| *(Meeting cancellation provision and expense reimbursements in that event)* | 4. Upon mutual agreement, the parties may change the date of the Grievance Review Board meeting or, if no grievances are pending, cancel the meeting. If one (1) party has good cause to cancel an already scheduled meeting, that party shall advise the other party as far in advance of the meeting date as possible. Should the Company cancel a Grievance Review Board meeting with less than forty-eight (48) hours advance notification, it shall reimburse the Association for the entire amount of flight pay loss associated with the release of the Association's Pilot representatives scheduled to attend the meeting. The parties shall select a rescheduled Grievance Review Board meeting date within seventy-two (72) hours from receipt of the cancellation notice. The rescheduled meeting shall occur within a period of two (2) weeks from the date of the originally scheduled and subsequently canceled Grievance Review Board meeting. |
| *(Grievant shall confer with Association in advance and provide remedy)* | 5. In advance of the Grievance Review Board meeting, each grievant shall confer with the Association's Grievance Committee in order to provide background information that may be useful in resolving the dispute. The grievant shall also provide the Grievance Committee with grievance resolution parameters acceptable to the grievant. |
| *(Meetings informal and no formal record made; all admissible data may be used at future hearings)* | 6. Discussions before the Grievance Review Board shall be informal in nature and the rules of evidence shall not apply. Each party may present such facts, evidence and arguments as desired, which shall not be limited to that presented during the prior stages of the grievance process. With the exception of discussions amongst the Grievance Review Board members focusing upon grievance settlement, any evidence presented before the Grievance Review Board may be used by either party in a Mediation Conference, or in a System Board of Adjustment hearing if the evidence is otherwise admissible. No formal record of the Grievance Review Board meeting shall be made. |

7. Grievance Review Board meetings shall be conducted using the Interest Based Bargaining methodology wherein the Board members are prepared to resolve disputes, focus on the issues at hand, share information freely, and mutually attempt to reach a resolution to an existing problem. *(Interest Based Bargaining (IBB) method to be used)*

8. The Grievance Review Board shall have the authority to resolve those disputes properly pending before it by one, or a combination of, the following options through mutual agreement: *(Dispute resolution options)*

   a. Settlement – the Grievance Review Board maintains the right to settle a grievance filed by an individual Pilot or a group grievance filed by the MEC Chairman. All settlements shall be formally memorialized in writing before adjourning the Grievance Review Board meeting or at a mutually acceptable date thereafter, and shall be final and binding on all parties involved. Copies of written settlement decisions shall be provided to the Association in accordance with Subsection 20.D.4.

   b. Withdrawal – the Grievance Review Board shall be free to recommend the withdrawal of a grievance filed by an individual Pilot or a group grievance filed by the MEC Chairman. A grievance withdrawn in accordance with this Subsection 21.B.8.b. shall be considered withdrawn with prejudice.

   c. Postponement – in an effort to obtain additional information necessary to fairly resolve a grievance, or to confer with a grievant before settling or withdrawing a grievance, the Grievance Review Board may postpone further consideration of a grievance until the next quarterly Grievance Review Board meeting.

   d. Unresolved – All grievances not settled, withdrawn or postponed shall be handled in the following manner:

      i. Disciplinary Grievance – an unresolved disciplinary grievance may be presented to the four-member System Board of Adjustment in accordance with Subsections 19.B and 21.C.

      ii. Non-disciplinary Grievance – before the

adjournment of a Grievance Review Board meeting, the parties shall determine whether an unresolved non-disciplinary grievance will be resolved by a five-member System Board of Adjustment or through a Mediation Conference. If the five-member System Board of Adjustment is used, the parties shall follow the procedure provided in Subsection 21.D.  If the Mediation Conference is used, the parties shall within ten (10) calendar days following adjournment of the Grievance Review Board meeting contact the mediator for availability and schedule the Mediation Conference for hearing as soon as practical.  The Mediation Conference shall be conducted in accordance with the Grievance Mediation Letter of Agreement.

*(Grievant may be required to attend; alternate means of testimony allowed)*

9. The Company and Association agree that under certain circumstances the presence of the grievant may be warranted at the Grievance Review Board, whether as a participant in the meeting, or as an advisor about the grievance outside the meeting.  In such circumstances, a grievant may be required to attend the meeting.  If the grievant is unable to attend due to vacation, training or personal emergency, discussion of the grievance shall be postponed until the next Grievance Review Board meeting, unless the parties agree to use alternative means of testimony as provided in Section 18.  If the Company requires the grievant's presence, it shall release the grievant from flight or reserve duties (if such an assignment exists) and pay protect the grievant for the pairing or reserve assignment (or portions thereof) missed.  A grievant shall not be compensated when required to appear on a day off.

C. DISCIPLINARY DISPUTES

*(Maximum of 10 days to file appeal to Vice President of Flight Operations)*

1. If dissatisfied with the Vice President of Flight Operations' or a designee's decision regarding a disciplinary dispute rendered pursuant to Subsection 19.A.3., either the Pilot or the Association may file a written appeal to the four-member Board within ten (10) calendar days from the date the Pilot receives a copy of the decision.

2. In advance of the appeal being heard at the four-member Board, the parties agree to submit and con-

sider the matter at the next scheduled Grievance Review Board in accordance with this Section 21.

3. If the matter cannot be resolved at the Grievance Review Board, then the four-member Board shall be convened within twenty-one (21) calendar days from the conclusion of the Grievance Review Board meeting to consider the appeal. *(If no resolution, four-member board shall convene within 21 calendar days)*

4. The Board shall be composed of four (4) members, two (2) of whom are selected by the Company and two (2) of whom are selected by the Association. The parties shall notify each other of their designated Board members no later than seven (7) calendar days prior to the Board hearing. *(Board composition)*

5. The four-member Board shall render its decision on the appeal within fourteen (14) calendar days from the close of the Board hearing. Should the Board fail to render a decision within this period, the Board shall be deemed to have deadlocked. *(Board must render its decision on appeal within 14 calendar days)*

6. In the event that the four-member Board deadlocks or is deemed to have deadlocked on an appeal, the Association may file a written appeal to the five-member Board discussed in Subsection 21.D.4. within ten (10) calendar days from the date the four-member Board deadlocks or is deemed to have deadlocked. *(Appeal of four-member board deadlock must be filed within 10 calendar days)*

7. The Association and the Company may by mutual written agreement bypass the Grievance Review Board or four-member System Board steps of this Subsection 21.C. *(Mutual agreement to bypass)*

D. NON-DISCIPLINARY DISPUTES

1. If dissatisfied with the Vice President of Flight Operations' or a designee's decision regarding a non-disciplinary dispute rendered pursuant to Subsection 20.A.4.d., the Association may file a written appeal to the five-member Board within thirty (30) calendar days from the date of the decision. *(Maximum of 30 days to file appeal of Vice President of Flight Operations' decision)*

2. In advance of the appeal being heard at the five-member Board, the parties agree to submit and consider the matter at the next scheduled Grievance Review Board in accordance with this Section 21.

3. If the matter cannot be resolved at the Grievance Review Board and the parties either determine not *(Can appeal to five-member board)*

        to utilize a Mediation Conference to resolve the matter or a subsequent Mediation Conference does not result in a settlement of the matter, then the five-member Board shall be convened to consider the appeal.

*(Five member-board composition)*    4.   The Board shall be composed of five (5) members, two (2) of whom are selected by the Company, two (2) of whom are selected by the Association, and one member of the panel of neutrals established pursuant to Subsection 21.E. The parties shall notify each other of their designated Board members no later than seven (7) calendar days prior to the Board hearing.

*(Selection of neutral Board member)*    a.   The parties shall select the neutral member from among the panel established pursuant to Subsection 21.E. by mutual agreement or, if unable to agree, by alternately striking names from the panel until one (1) name remains. Such selection shall occur within ten (10) calendar days following a timely appeal from the deadlocking of the four-member Board, the adjournment of the Grievance Review Board meeting, or the close of a Mediation Conference wherein a settlement could not be reached, as applicable.

       b.   The neutral shall be contacted within seven (7) calendar days following selection to schedule the hearing for a date as soon as practical.

E.   PANEL OF NEUTRALS

     1.   The Company and the Association shall by mutual agreement designate nine (9) neutral persons as the panel of neutrals.

*(Timetable and provision for removal and replacement of neutral)*    2.   The selected panel members shall serve until removed by either or both of the parties. Both parties may remove a neutral at any time by mutual agreement. Either party may remove a neutral, provided that the neutral has served at least one (1) year as a member of the panel and has heard and decided at least one (1) case. If a party determines to remove a neutral, that party shall provide the other party with thirty (30) calendar days' written notice of same, and the parties thereafter shall confer and by mutual agreement designate a replacement panel member. If the parties are unable to agree upon a replacement panel member before the expiration of

      the thirty (30) calendar day period, either party may request that the National Mediation Board provide a list of five (5) potential members, all of whom shall be members of the National Academy of Arbitrators, and the replacement panel member shall be selected by the parties alternately striking names, the first strike to be determined by coin toss, until only one (1) name remains.

  3.  Once a neutral has been selected to hear a case, a single party may not remove such neutral until the case has been heard and decided.

F.  PROCEEDINGS BEFORE THE BOARDS (EXCEPT GRIEVANCE REVIEW BOARDS)

  1.  All disputes properly submitted to a Board for consideration shall be addressed to the Board members, including all papers and exhibits. The party filing the submission shall forward three (3) copies to the Company's Vice President of Labor Relations, in the event of an Association submission, or to the Association's Contract Administration Office, in the event of a Company submission. Each case submitted shall state:   *(Submission content and direction)*

    a.  The question(s) at issue;

    b.  A statement of facts with supporting documents;

    c.  The position of the submitting party; and

    d.  The position of the other party.

  2.  Joint submissions may be made, but if the parties are unable to agree upon a joint submission, then either party may submit the dispute and its position to the Board. Unless the parties mutually agree otherwise in writing, no matter shall be considered by the Board which has not first been handled in accordance with the provisions of Sections 19, 20 or the Grievance Mediation Letter of Agreement, as applicable.   *(Joint submissions are optional)*

  3.  A Pilot covered by this Agreement may be represented at Board hearings by a person(s) the Association may designate or by a person(s) the Pilot may designate, with the approval of the Association. The Company may be represented at Board hearings by a person(s) the Company may designate.

|  |  |  |
|---|---|---|
|  | 4. | Evidence may be presented to the Board either orally or in writing and as provided in Subsection 18.B.3. |
| *(Written and/or oral evidence accepted)* | 5. | The Board, at the request of two (2) Board members, shall summon any witnesses employed by the Company who are deemed necessary to the dispute by either party or the Board itself. The Company shall release all witnesses requested, provided that such request is reasonable and will not cause a disruption in service (e.g., cancellation of flight(s), use or projected use of all reserves in a Position). |
|  | 6. | Either party has the right to call witnesses at Board hearings in accordance with Subsection 18.B. |
|  | 7. | The Board shall be competent to decide disputes by majority vote. Decisions of the Board shall be final and binding on the parties. |

G. EXPEDITED ARBITRATION

1. If a dispute between the parties requires the use of expedited arbitration, either by express provision of this Agreement, or as subsequently mutually agreed upon, the parties shall follow the procedure set forth in this Subsection 21.G.

*(Written notice required for expedited arbitration)*

2. The party seeking expedited arbitration shall forward written notice to the other party of its intent to seek expedited arbitration, accompanied by a submission as provided in Subsection 21.F.1.

*(Three-member Board composition)*

3. A three-member Expedited Arbitration Board shall be established. The Expedited Arbitration Board shall consist of one (1) member selected by the Company, one (1) member selected by the Association, and one (1) member of the panel of neutrals established pursuant to Subsection 21.E. The parties shall notify each other of their designated Board member no later than seven (7) calendar days prior to the Expedited Arbitration Board hearing.

*(Selection of neutral Board member)*

   a. The parties shall select the neutral member from among the panel established pursuant to Subsection 21.E. by mutual agreement, or if unable to agree, by alternately striking names from the panel, the first strike to be determined by coin toss, until one (1) name remains. Such selection shall occur within

|  |  |  |
|---|---|---|
|  | five (5) calendar days from the date of receipt of the notice provided in Subsection 21.G.2. |  |
| b. | The neutral shall be contacted within five (5) calendar days following selection to schedule the hearing for a date as soon as practical, but in no event later than ninety (90) calendar days from the date of receipt of the notice provided in Subsection 21.G.2.  Unless the parties mutually agree otherwise, if the selected neutral is not available within the ninety (90) calendar day period, then the last struck neutral shall be contacted to resolve the dispute.  This practice shall continue until such time as a neutral is selected, or if no neutral is available within the ninety (90) calendar day period, then the first available date of the neutral first contacted shall be used for the hearing date. | *(Neutral notification and selection of neutral if original is unavailable)* |
| 4. | Either party may submit a pre-hearing brief to the Expedited Arbitration Board, provided that the brief is submitted no more than seven (7) calendar days before the hearing and no less than three (3) calendar days before the hearing, and a copy of the brief is provided to the other party on the same day. | *(Pre-hearing briefs may be submitted three to seven calendar days before the hearing)* |
| 5. | The time period for each party to present its respective case shall be consistent with the concept of expedited arbitration. |  |
| 6. | Either party may submit a closing brief to the Expedited Arbitration Board, provided that the brief is submitted no more than seven (7) calendar days after the close of the hearing, or three (3) calendar days after the transcript of the hearing is available to the parties, whichever is later, and a copy of the brief is provided to the other party on the same day. | *(Closing briefs submission deadlines)* |
| 7. | The Expedited Arbitration Board shall render its award within thirty (30) calendar days after the close of the hearing. The Expedited Arbitration Board shall be competent to decide disputes by majority vote. Decisions of the Expedited Arbitration Board shall be final and binding on the parties. | *(Board shall render decisions within 30 calendar days)* |

H.  GENERAL

1. Except as otherwise provided herein, the Board shall meet as required in the city where the Company's general offices are maintained (unless the parties mutually agree otherwise), pro-   *(Board meeting location)*

|  |  |  |
|---|---|---|
|  |  | vided that at such time there are cases filed with the Board for its consideration. The specific date(s), time and location of the hearing shall be set by mutual agreement of the parties, or if unable to agree, then by the neutral, if applicable. |
|  | 2. | The time limits specified in this Section 21 may be extended by mutual written agreement of the Company and the Association. |
|  | 3. | Nothing contained herein shall be construed to limit, restrict or abridge the rights or privileges accorded to either the Pilot, the Company or their duly accredited representatives under the provisions of the Railway Labor Act, as amended. |
| *(Responsibility and distribution of incurred expenses)* | 4. | The Company and the Association will respectively assume the compensation and expenses of the Board members selected by them and the witnesses called by them. The expenses and reasonable compensation of the neutral, if applicable, shall be borne equally by the Company and the Association. The Company and the Association also shall share equally other expenses necessary for the proper conduct of the business of the Board, such as fees for conference room facilities. |
| *(Board members are free to discharge their duties)* | 5. | It is understood and agreed that each and every Board member shall be free to discharge the member's duty in an independent manner, without fear that the member's individual relations with the Company, Association or other Company employees may be affected in any manner by any action taken in good faith in the capacity of Board member. |
|  | 6. | A copy of all correspondence and decisions of the Board shall be furnished to the Association's Contract Administration Office, the MEC Chairman and the Company's Vice President of Labor Relations (or designee, specified in writing to the Association). |
| *(Notification requirements)* | 7. | All notification(s) shall be made in writing via U.S. Postal Service Certified Mail, Return Receipt Requested or by an express delivery service, signature required, addressed to the last known address of the party to whom the notice is being given. |

8. All time limits specified in this Section 21 shall be determined by the date of first attempted delivery. If delivery is delayed by authorized absence (e.g., sick leave, vacation, out-of-domicile training), time limits shall run from the date of return from absence or actual delivery, whichever occurs first. *(Time limits and delay of delivery parameters)*